UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: CANOPY FINANCIAL, INC., <br><br> Debtor. | ) <br> ) Chapter 7 <br> ) No. 09-44943 <br> ) |
| GUS A. PALOIAN, as Chapter 7 Trustee for Canopy Financial, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> RIDGESTONE BANK, BRUCE LAMMERS, and AETNA HEALTH HOLDINGS, LLC, as successor-by-merger to COVENTRY HEALTH CARE, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) 14 C 579 <br> ) (No. 11 A 1701) <br> ) <br> ) Judge Feinerman <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OPINION AND ORDER**

Having successfully moved to withdraw the reference of this adversary proceeding to the bankruptcy court, Doc. 20, Gus A. Paloian, the Chapter 7 Trustee for Canopy Financial, Inc., filed a fourth amended complaint against Ridgestone Bank and others, seeking to avoid and recover allegedly fraudulent transfers, objecting to their proofs of claims, and, relevant here, seeking contribution in the event that Coventry is found liable for losses arising from fraud committed by two of its high-ranking employees. Doc. 25. Ridgestone has moved under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings as to the contribution claim. Doc. 27. The motion is denied.

**Background**

As on a Rule 12(b)(6) motion, the court on a Rule 12(c) motion assumes the truth of the fourth amended complaint's well-pleaded factual allegations, though not its legal conclusions.

1

*See Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014) ("A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)."); *Reger Development, LLC v. National City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). The court must also consider "documents attached to the [fourth amended] complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in the non-movant's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012). To the extent that an exhibit contradicts the fourth amended complaint's allegations, the exhibit takes precedence. *See Forrest v. Universal Savings Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). The following facts are set forth as favorably to the Trustee as permitted by those materials.

Canopy was a software company in the healthcare industry. Doc. 25 at ¶ 26. Among its products was HealthDirect, a software platform that allowed individuals with Health Savings Accounts to deposit money into, and to make payments for qualified medical expenses from, their accounts. *Id*. at ¶¶ 26-27. Coventry provided its employees and customers—whom the parties call the "Subscribers"—with Health Savings Accounts at Ridgestone Bank using Canopy's software. *Id.* at ¶¶ 32-33, 59. (Coventry has since merged with Aetna Health Holdings, LLC, but the parties continue to refer to it as Coventry and so will the court.) From 2008 to 2009, Canopy executives Jeremy Blackburn and Anthony Banas stole millions of dollars as part of an elaborate fraud, including by raiding the Subscribers' accounts at Ridgestone. *Id.* at ¶ 14. All told, the Subscribers' losses exceeded $15 million. *Id.* at ¶ 67. The eventual revelation of Blackburn and Banas's fraud sent Banas to prison (Blackburn was found dead the day before

he was to report to prison) and Canopy into bankruptcy. *See United States v. Banas*, 712 F.3d 1006, 1008-09 (7th Cir. 2013); *In re Canopy Financial, Inc.*, 708 F.3d 934, 934 (7th Cir. 2013).

It appears that Coventry "made the Subscribers whole for their losses by establishing and funding new … accounts in their names at another bank." Doc. 29 at 2. Arguing that it was therefore the Subscribers' subrogee, Coventry filed a proof of claim in Canopy's bankruptcy proceeding. Coventry also sued Ridgestone as the Subscribers' subrogee for Ridgestone's alleged role in causing the Subscribers' losses—the parties call this adversary proceeding the "Subscribers' Lawsuit," which was assigned No. 12 A 426—and Coventry later assigned its claims against Ridgestone to the Trustee. (That's right, Canopy's Trustee, having stepped into Coventry's and thus the Subscribers' shoes, is suing Ridgestone for failing to stop Canopy's own high-ranking officers from stealing from the Subscribers.) Ridgestone filed its own proof of claim in the bankruptcy proceeding. And the Trustee filed this adversary action against Ridgestone, Coventry, and others—the parties call this action, which was assigned No. 11 A 1701, the "Trustee Lawsuit"—asserting claims described in this opinion's introductory paragraph. The references to the bankruptcy court for the two proofs of claims and the two lawsuits have been withdrawn and now are pending before the undersigned district judge. Doc. 20.

**Discussion**

Ridgestone's request for judgment on the pleadings on the Trustee's contribution claim rests on a simple syllogism: (1) under the applicable state law, intentional tortfeasors are not entitled to contribution from co-tortfeasors; (2) Canopy is an intentional tortfeasor; (3) Canopy therefore cannot seek contribution from Ridgestone. Doc. 29 at 8. The Trustee rightly does not dispute the major premise, as both Illinois and Wisconsin preclude intentional tortfeasors from

3

obtaining contribution. *See Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 538 N.E.2d 530, 542 (Ill. 1989); *Appley v. West*, 929 F.2d 1176, 1180 (7th Cir. 1991) (per curiam) (Illinois law); *National Accident Ins. Underwriters, Inc. v. Citibank, FSB*, 333 F. Supp. 2d 720, 727 (N.D. Ill. 2004) (Illinois law); *Fleming v. Threshermen's Mutual Ins. Co.*, 388 N.W.2d 908, 910 (Wis. 1986); *Schimpf v. Gerald, Inc.*, 52 F. Supp. 2d 976, 990 (E.D. Wis. 1999) (Wisconsin law). The question here is whether the pleadings indisputably establish, as a matter of law, that Canopy is an intentional tortfeasor.

Ridgestone offers two reasons for answering "yes." First, it argues that because Canopy is liable to the victims of Blackburn and Banas's fraud (an intentional tort) under the traditional agency principles, Canopy is an intentional tortfeasor as well. Doc. 29 at 7-8; Doc. 42 at 4-5. Ridgestone's premise (that Canopy may be liable as the individual fraudsters' principal) may be correct, but its conclusion (that Canopy is therefore an intentional tortfeasor) does not follow from that premise. A company vicariously liable for its employees' intentional misconduct is not itself considered an intentional tortfeasor for purposes of the prohibition against seeking contribution from the company's fellow tortfeasors. As the Court of Appeals of Minnesota explained:

> [A]n intentional tortfeasor is barred from seeking contribution because "the courts will not aid one who has deliberately done harm, so that no man can be permitted to found a cause of action on his own intentional tort." Restatement (Second) of Torts § 886A cmt. j. A party that is only vicariously liable for another's intentional tort has neither deliberately caused harm nor committed a tort, so the intentional tort theory does not operate to bar [its] right to contribution.

*Oelschlager v. Magnuson*, 528 N.W.2d 895, 899 (Minn. App. 1995) (case citations omitted). Other courts have adopted this reasoning, *see*, *e.g.*, *In re Air Crash Near Cali, Colombia on December 20, 1995*, 24 F. Supp. 2d 1340, 1351 (S.D. Fla. 1998) (Florida law); *Dolinka*

*VanNoord & Co. v. Oppenheimer & Co.*, 891 F. Supp. 1244, 1249 (W.D. Mich. 1995) (Michigan law), and Ridgestone does not cite and the court cannot find any decision that disagrees.

True, Ridgestone does cite *In re F.W. Koenecke & Sons, Inc.*, 605 F.2d 310 (7th Cir. 1979), which held an accounting firm liable for breach of contract because the firm "clearly authorized [a dishonest employee] to discharge its contractual obligations and thereby placed him in a position that enabled him to continue the fraud while apparently acting within his authority." *Id.* at 312-13. Canopy, says Ridgestone, is just like the accounting firm in *F.W. Koenecke*. Even if Ridgestone were right, that would only make Canopy vicariously liable for Blackburn and Banas's fraud. *See* O.W. Holmes, Jr., "Agency," 4 *Harv. L. Rev.* 345, 348 (1891) ("In tort, masters are held answerable for conduct on the part of their servants, which they not only have not authorized, but have forbidden."). The question here is whether Canopy's vicarious liability disables it from seeking contribution from the other tortfeasors. The cases cited above say it does not, and *F.W. Koenecke* says nothing to the contrary.

More tenable is Ridgestone's second argument, that Blackburn and Banas used Canopy as an "engine of theft," making Canopy directly, not merely vicariously, liable for the fraud. Doc. 29 at 4-7; Doc. 42 at 2-4. The "engine of theft" language comes from *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449 (7th Cir. 1982), where a corporation whose officers had engaged in a massive fraud sued its auditors for negligence. The auditors asserted the *in pari delicto* defense (Latin for "in equal fault"), requiring the Seventh Circuit to "decide in what circumstances, if any, fraud by corporate employees is a defense in a suit by the corporation against its auditors for failure to prevent the fraud." *Id.* at 454. The court held that "if the fraud permeates the top management of the company and if, moreover, the managers are not stealing from the company—that is, from its current stockholders—but instead are turning the company

into an engine of theft against outsiders—creditors, prospective stockholders, insurers, etc.," *ibid.*, then "the corporation should not be allowed to shift the entire responsibility for the fraud to its auditors," *id.* at 456. *Accord*, *Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 596 (7th Cir. 2012) (Illinois law); *Holland v. Arthur Andersen & Co.*, 469 N.E.2d 419, 425 (Ill. App. 1984). *Cenco* has been praised and criticized, but it endures in the Seventh Circuit. *See Parmalat Capital Finance Ltd. v. Grant Thornton Int'l*, __ F.3d __, 2014 WL 2871193, at *4-5 (7th Cir. June 25, 2014).

If Blackburn and Banas used Canopy as an engine of theft—that is, if their fraud was not adverse to Canopy—then under *Cenco*, Canopy would be directly liable for the fraud. *See McGladrey*, 676 F.3d at 599; *Prime Eagle Group Ltd. v. Steel Dynamics, Inc.*, 614 F.3d 375, 379 (7th Cir. 2010). Indeed, a large portion of their fraud benefitted Canopy; Blackburn and Banas raised roughly $75 million in investments for the company on the basis of fraudulent financial statements printed on fake letterheads. *See Banas*, 712 F.3d at 1008. Less clear at this stage of the proceedings is whether the fraud at issue here, in the Trustee Lawsuit—the $15 million theft of the Subscriber accounts held at Ridgestone—also benefitted Canopy, given the fourth amended complaint's allegation that Blackburn and Banas "used the misappropriated funds for their personal use and benefit." Doc. 25 at ¶ 67. That question cannot be resolved on the pleadings, which means that neither can the concomitant question whether Canopy was an engine of theft and therefore directly liable for the fraud or, alternatively, only vicariously liable for the unauthorized actions of a pair of rogue employees. *See McGladrey*, 676 F.3d at 597 ("The district court apparently supposed that, if Bell was criminally culpable in 2008, then surely he knew about the Ponzi scheme earlier. But this is not something a court can assume at the complaint stage of litigation. The court must accept the complaint's allegations—and the

Trustee expressly alleges that, until February 2008, Bell did *not* know that Petters had built a house of cards."). It follows that Ridgestone's "engine of theft" attack on the Trustee's contribution claim cannot be resolved in Ridgestone's favor on a Rule 12(c) motion.

Ridgestone counters that the Trustee has pleaded himself out of court by *admitting* to Canopy's direct responsibility for the fraud. Ridgestone puts great weight on ¶ 5 of the fourth amended complaint, which reads:

> Additionally, the Trustee … requests that the Coventry [proof of claim] be … *disallowed in part* to the extent that Coventry is determined to have been contributorily negligent with respect to the theft of HSA funds from the Ridgestone account.

Doc. 25 at ¶ 5 (emphasis added). By asking that the Coventry proof of claim be disallowed only "in part" were Coventry to be found at fault, says Ridgestone, the Trustee has necessarily admitted that Canopy is also at least partially at fault. The Trustee responds that ¶ 5 was intended not as an admission of Canopy's direct liability, but merely as a conditional statement; in support, he points to ¶ 173, which is included in the portion of the fourth amended complaint setting forth the contribution claim, and which reads: "*If* Canopy is found liable for the Subscribers' losses, then Canopy has a right to contribution from Ridgestone and/or Coventry …." *Id.* at ¶ 173 (emphasis added). On a Rule 12(c) motion, the court must draw all reasonable inferences in the Trustee's favor, and the fourth amended complaint does not contain an explicit admission of Canopy's direct liability for the fraud. Maybe the record, once developed, will allow the court to conclude on summary judgment, or the jury to conclude at trial, that Canopy is directly liable for its employees' fraud, but a decision to that effect on the pleadings would be reversibly premature.

**Conclusion**

For the foregoing reasons, Ridgestone's motion for partial judgment on the pleadings as to the contribution claim of the Trustee's fourth amended complaint is denied.

July 28, 2014

_____
United States District Judge