UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: CANOPY FINANCIAL, INC.,<br><br>          Debtor.<br><br>GUS A. PALOIAN, as Chapter 7 Trustee for Canopy Financial, Inc.,<br><br>        Plaintiff/Counter-Defendant,<br><br>        vs.<br><br>AETNA HEALTH HOLDINGS, LLC, as successor-by-merger to COVENTRY HEALTH CARE, INC.,<br><br>        Defendant/Counter-Plaintiff,<br><br>        and<br><br>RIDGESTONE BANK,<br><br>          Defendant. | Chapter 7<br>No. 09-44943<br>(Proof of Claim No. 963-1)<br><br><br>14 C 579<br>(Adversary No. 11-1701)<br><br>Judge Feinerman |

**MEMORANDUM OPINION AND ORDER**

Having successfully moved to withdraw the reference of an adversary proceeding he filed in the bankruptcy court against Coventry Health Care, Inc. (which has since merged with Aetna Health Holdings, LLC, but the parties continue to call it "Coventry") and Ridgestone Bank, Doc. 20, Gus A. Paloian, the Chapter 7 Trustee for Canopy Financial, Inc., filed a fourth amended complaint, which seeks to avoid and recover allegedly fraudulent transfers, objects to Coventry's and Ridgestone's proofs of claims, and seeks to impose contribution liability on them for a fraud committed by two of Canopy's high-ranking employees. Doc. 25. Coventry answered and filed a counterclaim for contribution. Doc. 30. Ridgestone answered but did not file a counterclaim. Doc. 26. The court previously denied Ridgestone's motion for judgment on

1

the pleadings as to the Trustee's contribution claim. Docs. 50-51 (reported at 2014 WL 3725724 (N.D. Ill. July 28, 2014)). Now before the court are Coventry's motion under Civil Rule 15(a) and Bankruptcy Rule 7015 to add more counterclaims, Doc. 61; the Trustee's motion under Civil Rule 12(c) and Bankruptcy Rule 7012 for judgment on the pleadings as to Coventry's existing counterclaim, Doc. 69; and the Trustee's objection under Bankruptcy Rule 3007 to Counts II through V of Ridgestone's proof of claim, Doc. 33. Coventry's motion is granted, the Trustee's motion is denied, and Counts II through V of Ridgestone's proof of claim are disallowed.

## Background

As on a Civil Rule 12(b)(6) motion, the court on a Civil Rule 12(c) and Civil Rule 15(a) motion assumes the truth of the counterclaims' well-pleaded factual allegations, though not their legal conclusions. *See Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014) ("A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)."); *Reger Development, LLC v. Nat'l City Bank,* 592 F.3d 759, 763 (7th Cir. 2010); *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 & n.3 (7th Cir. 2004) (applying the Civil Rule 12(b)(6) standard to a Civil Rule 15 motion to amend). The court must also consider "documents attached to the [counterclaims], documents that are critical to the [counterclaims] and referred to in [them], and information that is subject to proper judicial notice," along with additional facts set forth in Coventry's briefs, so long as those additional facts "are consistent with the pleadings." *Geinosky v. City of Chicago,* 675 F.3d 743, 745 n.1 (7th Cir. 2012). The following facts are set forth as favorably to Coventry as permitted by these materials. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

Canopy was a software company in the healthcare industry. Doc. 30 at p. 10, ¶ 26. Among its products was HealthDirect, a software platform that allowed individuals with Health Savings Accounts to deposit money into, and to make payments from, their accounts. *Id*. at p. 10, ¶¶ 26-27. Coventry provided its employees and customers—the parties call them the "Subscribers"—with Health Savings Accounts at Ridgestone Bank using Canopy's software. *Id*. at pp. 12, 18, ¶¶ 32-33, 59. From 2008 to 2009, Canopy executives Jeremy Blackburn and Anthony Banas stole millions of dollars as part of an elaborate fraud, including by raiding the Subscriber accounts at Ridgestone. *Id*. at p. 6, ¶ 14. All told, the loss to the Subscribers exceeded $15 million. *Id*. at pp. 20-21, ¶ 67. The eventual revelation of Blackburn and Banas's fraud sent Banas to prison (Blackburn was found dead the day before he was to report to prison) and Canopy into bankruptcy. *See United States v. Banas*, 712 F.3d 1006 (7th Cir. 2013); *In re Canopy Fin., Inc.*, 708 F.3d 934 (7th Cir. 2013).

In December 2009, Coventry "reimbursed all of its Subscribers' misappropriated funds, thereby making the[m] whole." Doc. 30 at p. 55, ¶ 33. Arguing that it was therefore the Subscribers' subrogee, Coventry filed a proof of claim in Canopy's bankruptcy proceeding. Coventry also sued Ridgestone as the Subscribers' subrogee for causing the Subscribers' losses—the parties call that suit, which was assigned No. 12 A 426, the "Subscribers' Lawsuit"—and Coventry later assigned its claim against Ridgestone to the Trustee. (That's right, Canopy's Trustee, having stepped into Coventry's and thus the Subscribers' shoes, is suing Ridgestone for failing to stop Canopy's own high-ranking officers from stealing from the Subscribers.) Ridgestone filed its own proof of claim in the bankruptcy proceeding. And the Trustee filed an adversary action against Ridgestone, Coventry, and others—the parties call this suit, which was assigned No. 11 A 1701, the "Trustee Lawsuit"—asserting claims described in

3

this opinion's introductory paragraph. The references to the bankruptcy court of the two proofs of claims and the two adversary actions have been withdrawn, and those matters are pending before the undersigned district judge. Doc. 20.

## Discussion

I. **Coventry's Motion to Amend Its Counterclaims and the Trustee's Motion for Judgment on the Pleadings in the Trustee Lawsuit**

Coventry's existing counterclaim in the Trustee Lawsuit seeks to impose contribution liability on the Trustee. Doc. 30 at pp. 57-58, ¶¶ 43-52. Coventry wants to add counterclaims for conversion, contractual indemnity, fraud, and equitable indemnity. Doc. 61-1 at ¶¶ 81-143. Some of those additional counterclaims rest on inconsistent theories, as permitted by Civil Rule 8(d). *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805 (1999) ("Our ordinary Rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to 'set forth two or more statements of a claim or defense alternately or hypothetically,' and to 'state as many separate claims or defenses as the party has regardless of consistency.'") (quoting current Fed. R. Civ. P. 8(d)(2) and (3)); *Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 597 (7th Cir. 2012) ("[T]here's no rule against inconsistent pleadings in different suits, or for that matter a single suit."). Although in an adversary proceeding the Bankruptcy Rules apply, *see* Fed. R. Bankr. P. 7001; *Diamond Mortg. Corp. of Ill. v. Sugar*, 913 F.2d 1233, 1241 (7th Cir. 1990) ("[T]he rules of Part VII, then, apply to all adversary proceedings, whether they transpire in bankruptcy or in district court."), the applicable bankruptcy rule incorporates Civil Rule 8, *see* Fed. R. Bankr. P. 7008 ("Rule 8 … applies in adversary proceedings."), including the inconsistent pleading allowance of Rule 8(d), *see* 10 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* § 7008.05, pp. 7008-12–7008-13 (16th ed. Rel. 127-9/2013).

4

If a party moves to amend its pleadings before trial, "[t]he court should freely give leave [to do so] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see* Fed. R. Bankr. P. 7015 ("Rule 15 … applies in adversary proceedings."). "Perhaps the most important factor listed by the [Supreme] Court for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter a pleading. Conversely, if the court is persuaded that no prejudice will accrue, the amendment should be allowed." 6 Charles Alan Wright et al., *Federal Practice & Procedure* § 1487, p. 701 (3d ed. 2010) (footnote omitted) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Sides v. City of Champaign*, 496 F.3d 820, 825 (7th Cir. 2007). The Trustee does not contend that he would be prejudiced in any substantive way by Coventry's adding the counterclaims. And how could he? After all, in opposing Coventry's motion for leave to amend, he invites Coventry to amend its proof of claim to add exactly the same theories that Coventry wishes to pursue via the additional counterclaims. Doc. 71 at 5. That alone warrants granting Coventry's motion.

The Trustee counters that allowing Coventry to amend its pleadings would delay final resolution of the case, especially because it might induce Ridgestone to move to amend its pleading to add counterclaims of its own. Maybe, maybe not; but *Ridgestone*'s future litigation strategy is neither here nor there in resolving *Coventry*'s motion to amend its pleadings. Anyway, "delay by itself is normally an insufficient reason to deny a motion for leave to amend. Delay must be coupled with some other reason. Typically, that reason … is prejudice to the non-moving party." *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004) (citation omitted). Absent a showing of prejudice to the Trustee apart from mere delay, Coventry will be permitted to amend its counterclaims.

Indeed, were this not a bankruptcy case, *Coventry* would probably be prejudiced by the court's denying leave to amend, because the counterclaims would likely be compulsory under Civil Rule 13(a) and therefore, if not asserted, likely lost forever. *See* Fed. R. Civ. P. 13(a)(1)(A) ("A pleading must state as a counterclaim any claim that … arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[.]"); *Southern Constr. Co. v. Pickard*, 371 U.S. 57, 60 (1962) (per curiam) (noting that Civil Rule 13(a) "was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint"). Bankruptcy Rule 7013 relaxes this principle, providing that "Rule 13 … applies in adversary proceedings, except that a party sued by a trustee … need not state as a counterclaim any claim that the party has against the debtor." Fed. R. Bankr. P. 7013. Significantly, however, the Bankruptcy Rules do not *prohibit* a party from asserting a counterclaim in an adversary suit brought by a trustee, even if that party has filed or could file a proof of claim seeking recovery of the same amounts on essentially the same grounds; put another way, although an adversary defendant sued by a trustee is not *required* to assert as a counterclaim any claim it might have, neither is it *precluded* from doing so. *See* Resnick & Sommer, *supra*, § 7013.04, p. 7013-5 (16th ed. Rel. 120-12/2011) ("If the claim is allowable … [then] a proof of claim should be filed …; it would not be necessary to raise it as a counterclaim. That is not to say that it *cannot* be raised as a counterclaim. Rule 7013 merely provides that it *need not* be raised[.]") (emphases added); *In re Am. Fabricators, Inc.*, 186 B.R. 526, 529 (Bankr. M.D. Fla. 1995) ("[P]laintiff argues that Whitlock's counterclaim must be dismissed because it seeks recovery not available outside a distribution of the estate and duplicates Whitlock's previously filed proof of claim. … [But] the bankruptcy rules do not prohibit a creditor from filing a proof of claim and a counterclaim when sued by the

6

trustee."); *Zweygardt v. Colo. Nat'l Bank of Denver*, 51 B.R. 214, 216 (Bankr. D. Colo. 1985) ("Seldom would a party who is sued by the debtor possess a pre-petition cause of action that is not also set forth in a proof of claim …. [I]f Congress had intended for §§ 501 and 502, together with B.R.P. 3003 and 3007 to preclude the filing of a counterclaim for a pre-petition cause of action, it could easily have provided in B.R.P. 7013 that such pre-petition causes of action *may not* be asserted by way of a counterclaim. Congress could also easily have provided that the filing of a proof of claim shall be the sole method of asserting and establishing claims against the bankruptcy estate. Congress did not so provide.").

Coventry has properly filed a proof of claim to protect its interests; nothing prevents it from also filing counterclaims in the Trustee Lawsuit. Because the Trustee would not be prejudiced by Coventry's adding more counterclaims, Coventry's motion to amend is granted. And for the same reason, the Trustee's motion for judgment on the pleadings as to Coventry's existing counterclaim is denied. The Trustee's sole ground for dismissing that counterclaim is that it should be channeled into a proof of claim instead. But as just discussed, nothing in the applicable Rules requires or even favors that outcome.

**II.     The Trustee's Objection to Counts II-V of Ridgestone's Proof of Claim**

In the Subscribers' Lawsuit (the one filed by Coventry against Ridgestone and now assigned to the Trustee), Ridgestone filed a third-party complaint against Canopy alleging contractual indemnity, common law implied indemnity, contribution, equitable subrogation, and statutory subrogation. Ridgestone also filed a proof of claim, incorporating by reference the third-party complaint's allegations. In October 2013, before the reference was withdrawn, the bankruptcy judge dismissed the third-party complaint in its entirety, explaining:

> As an unsecured creditor, Ridgestone was required under Rule 3002(a) to file a proof of claim unless one of the exceptions applied. No exception applied.

7

> Nevertheless, Ridgestone sought to adjudicate its claim against the estate by filing a third-party complaint. Because there's no basis in the Code or Rules for this departure from the claims allowance process, the trustee's motion is granted and Ridgestone's third-party complaint is dismissed.
>
> However, this ruling has no effect on Ridgestone's proof of claim, which, in the absence of an objection, stands as allowed.

Doc. 33-3 at 7. The Trustee has now filed an objection to Counts II through V of Ridgestone's proof of claim (all but the contractual indemnity claim).

Count II alleges implied common law indemnity, and the Trustee argues that it should be disallowed because Illinois has abolished implied indemnity. This argument raises the antecedent question which State's law governs this dispute. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). When exercising diversity jurisdiction, a federal court must follow the choice of law rules adopted by the State in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) ("[T]he prohibition declared in *Erie Railroad v. Tompkins* … extends to the field of conflict of laws."). "Illinois has adopted the approach found in the Second Restatement of Conflict of Laws." *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 919 (Ill. 2007). Under the Second Restatement, the law of the State that "has the most significant relationship to the transaction and the parties" applies. *Restatement (Second) of Conflict of Laws* § 188(1) (1971). Relevant contacts in contract cases include "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *Id.* § 188(2); *see Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004) (Illinois choice of law); *Eclipse Mfg. Co. v. U.S. Compliance Co.*, 886 N.E.2d 349, 357-58 (Ill. App. 2007). In tort cases, relevant contacts include "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the

place where the relationship, if any, between the parties is centered." *Restatement (Second) of Conflict of Laws* § 145(2); *see Kamelgard v. Macura*, 585 F.3d 334, 341 (7th Cir. 2009) (Illinois choice of law); *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 905-06 (Ill. 2007).

Canopy's headquarters were located in Chicago, and although Ridgestone is a Wisconsin bank, it has a branch office in Schaumburg, Illinois, which is where Ridgestone's Vice President and "relationship manager" for Canopy worked. Doc. 26 at ¶¶ 8-9, 35. The negotiations between Canopy, Coventry, and Ridgestone that eventually yielded the parties' various agreements took place in Chicago. *Id.* at ¶ 41. And Blackburn and Banas's fraudulent conduct occurred in Illinois, where they were criminally indicted. *Id.* at ¶ 16. In the face of these undisputed facts, all of which point indisputably to Illinois's having the "most significant relationship" to the case, Ridgestone argues not that Wisconsin law necessarily applies, but only that "it may be premature to decide whether Illinois or Wisconsin law applies." Doc. 54 at 10. Yet Ridgestone points to nothing that it hopes to uncover, in discovery or elsewhere, that would possibly tilt the "most significant relationship" balance toward Wisconsin. And so, as did the bankruptcy judge, Doc. 33-2 at 13-15, this court holds that Illinois law applies.

In Illinois, common law implied indemnity "based on tort principles of relative blameworthiness has ceased to exist" as a result Illinois's enactment of the Joint Tortfeasor Contribution Act, 740 ILCS 100/1 *et seq*. *Am. Nat'l Bank & Trust Co. v. Columbus-Cuneo-Cabrini Med. Ctr.*, 609 N.E.2d 285, 288 (Ill. 1992); *see also Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 273-74 (7th Cir. 1986) (same). Ridgestone argues that the Act eliminates common law implied indemnity only as against *negligent* co-tortfeasors, not as against *intentional* co-tortfeasors. In other words, according to Ridgestone, while a negligent tortfeasor may no longer seek implied indemnity from a negligent co-tortfeasor, it may still do so from an intentional co-

9

tortfeasor. Ridgestone bases its argument on *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 538 N.E.2d 530 (Ill. 1989), in which the Supreme Court of Illinois concluded that "intentional tortfeasors are not entitled to contribution under the Illinois Contribution Among Joint Tortfeasors Act." *Id.* at 542. From this, Ridgestone concludes that "the intentional tortfeasor should be obligated to pay the full amount of any judgment," and therefore that "a negligent joint tortfeasor must be permitted to recover from an intentional tortfeasor under common law indemnity, notwithstanding the Act." Doc. 54 at 12.

Neither conclusion is logically sound, and neither is consistent with the Illinois Supreme Court's unequivocal holding in *American National Bank* that indemnity "based on tort principles of relative blameworthiness has ceased to exist." 609 N.E.2d at 288. A negligent tortfeasor's attempt to obtain indemnity from an intentional co-tortfeasor is "based on … relative blameworthiness" no less than its attempt to do so from a negligent co-tortfeasor. And *Gerill* is perfectly consistent with that principle: intentional tortfeasors cannot seek common law implied indemnity either. Count II of Ridgestone's proof of claim is therefore disallowed. *See Mizuho Corp. Bank (USA) v. Cory & Assocs., Inc.*, 341 F.3d 644, 652-53 (7th Cir. 2003) ("A claim of implied indemnity under Illinois law arises *only* where the indemnitee … was guiltless with respect to the underlying tort.") (emphasis added) (citing *Am. Nat'l Bank & Trust*, 609 N.E.2d at 287-88).

The Trustee objects to Count III of Ridgestone's proof of claim, for contribution, on the ground that Canopy's contribution liability to Ridgestone, if any, is contingent on the outcome of the Subscribers' Lawsuit. Section 502(e)(1) of the Bankruptcy Code provides that "the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that … such claim for

10

reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution." 11 U.S.C. § 502(e)(1)(B). Coventry has a claim against both Canopy and Ridgestone for the losses it suffered when it reimbursed the subscribers. Because Ridgestone has not even been found liable, its contribution claim against Canopy is properly characterized as contingent and, under § 502(e)(1)(B), must be disallowed. *See In re MEI Diversified, Inc.*, 106 F.3d 829, 832 (8th Cir. 1997) ("The primary example of a contingent claim [under Section 502(e)(1)(B)] is when a codebtor has not paid the creditor[.]") (quotation marks omitted); *In re A & H, Inc.*, 122 B.R. 84, 86 (Bankr. W.D. Wis. 1990) (same).

The Trustee likewise objects to Counts IV and V, both for subrogation, on the ground that Ridgestone has not actually paid anything to anybody. Section 509(a) of the Bankruptcy Code provides that "an entity that is liable with the debtor on, or that has secured, a claim of a creditor against a debtor, *and that pays such a claim*, is subrogated to the rights of such creditor to the extent of such payment." 11 U.S.C. § 509(a) (emphasis added). Ridgestone has not paid anything to Coventry, and thus cannot be subrogated to Coventry under § 509(a). *See In re Celotex Corp.*, 472 F.3d 1318, 1321 (11th Cir. 2006) (per curiam) ("Eligible parties are subrogated to the extent they pay the claim."); *Feldhahn v. Feldhahn*, 929 F.2d 1351, 1354 (8th Cir. 1991) (holding that § 509(a) "requires the subrogee to pay the entire debt," although "collateralized assignment constitutes payment under the statute"); *cf. In re Bugos*, 760 F.2d 731, 734 (7th Cir. 1984) ("Plaintiff paid 'such claim[s];' *therefore*, without more, he is subrogated to their rights[.]") (first alteration in original, emphasis added). Counts IV and V therefore are disallowed. *See In re Karp*, 373 B.R. 837, 844 (Bankr. N.D. Ill. 2007) ("[B]ecause there is no evidence that Sherry paid any of the expenses that Debtor was obligated to pay[,] her claim of

subrogation must fail.") (citing *Am. Nat'l Bank & Trust Co. of Chi. v. Weyerhaeuser Co.*, 692 F.2d 455, 460 (7th Cir. 1982)).

The court adds for good measure that § 502(e)(1)(C) of the Bankruptcy Code states that "the court shall disallow any claim for reimbursement or contribution … to the extent that … such entity asserts a right of subrogation." 11 U.S.C. § 502(e)(1)(C). This means that Ridgestone may not simultaneously pursue proofs of claim for contribution and subrogation. *See In re Erin Food Servs., Inc.*, 980 F.2d 792, 803 n.19 (1st Cir. 1992) ("Once Murray surrendered the collateral securing his guaranty, he could either assert his own *unsecured* claim for reimbursement and contribution, or rely on his right of subrogation to the secured lenders' *partially secured* claim against the debtor estate.") (citations omitted); *In re Missionary Baptist Found. of Am., Inc.*, 667 F.2d 1244, 1245 (5th Cir. 1982); *In re Richardson*, 193 B.R. 378, 380 (D.D.C. 1995) ("Concededly, Old Republic has two types of claims: (1) a claim for reimbursement or contribution, and (2) a subrogation claim; and it is clear under the Bankruptcy Code that it cannot have an allowed claim in both categories because that would permit it to effectuate a double recovery."). The issue is moot, however, as Ridgestone's contribution and subrogation proofs of claim each fail on the independent grounds set forth above.

Ridgestone does not dispute any of this, but argues that a ruling on Counts III, IV, and V should be deferred until a trial on Ridgestone's, Canopy's, and Coventry's respective liabilities for the fraud. Otherwise, says Ridgestone, once the extent of each party's liability is assessed, Ridgestone will simply move to reconsider the disallowance of its claims, *see* 11 U.S.C. § 502(j) ("A claim that has been allowed or disallowed may be reconsidered for cause."), resulting in wasteful motion practice. So, Ridgestone concludes, the court should defer ruling on the Trustee's objections to Counts III, IV, and V at this stage in the proceedings.

12

Ridgestone has a decent point, especially given that the court has completely withdrawn the reference of both proofs of claims and both adversary actions, which will allow the court to decide all of the related issues in this case in one go. Doc. 20. But the statutory text is clear: Ridgestone may not maintain a contribution claim that is contingent; it may not assert a subrogation claim because it has not actually paid any money; and, in any event, it may not simultaneously assert both types of claims as part of a proof of claim. "[W]here, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (internal quotation marks omitted); *see also Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (same). The court expresses no opinion at this time on whether Ridgestone may be able to press one or more of these (possibly inconsistent) theories of recovery as counterclaims in the Trustee Lawsuit.

### Conclusion

For the foregoing reasons, Coventry's motion to amend its counterclaims is granted, the Trustee's motion for judgment on the pleadings is denied, and Counts II through V of Ridgestone's proof of claim are disallowed.

January 7, 2015

United States District Judge

13